1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 22, 2021

SEAN F. McAVOY, CLERK

4

5  UNITED STATES DISTRICT COURT

6  EASTERN DISTRICT OF WASHINGTON

7  JOSEPHINE V.,

8            Plaintiff,
        v.
9
   KILOLO KIJAKAZI, Acting
10 Commissioner of the Social Security
   Administration,[1]
11
             Defendant.
12

| | |
|---|---|
| No: 1:20-CV-03060-FVS | |

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

13    BEFORE THE COURT are the parties' cross-motions for summary

14 judgment.  ECF Nos. 13, 14.  This matter was submitted for consideration without

15 oral argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is

16 represented by Special Assistant United States Attorney Lars J. Nelson.  The

17

18    [1]Kilolo Kijakazi became the Acting Commissioner of Social Security on

19 July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,

20 Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No

21 further action need be taken to continue this suit.  *See* 42 U.S.C. § 405(g).

ORDER ~ 1

Court, having reviewed the administrative record and the parties' briefing, is fully

informed.  For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion

for Summary Judgment, ECF No. 13, **DENIES** Defendant's Motion for Summary

Judgment, ECF No. 14, and **REMANDS** the case for to the Commissioner for

additional proceedings.

## JURISDICTION

Plaintiff Josephine V.[2] filed applications for Disability Insurance Benefits

(DIB) and Supplemental Security Income (SSI) on July 29, 2013, Tr. 57, 70,

alleging disability since July 1, 2009, Tr. 174, 181, due to learning disabilities;

knee pain; leg pain; fibromyalgia; depression; back pain; arthritis in the left hip;

and arthritis in the hands, Tr. 207.  Benefits were denied initially, Tr. 115-23, and

upon reconsideration, Tr. 126-36.  A hearing before Administrative Law Judge

Gordon W. Griggs ("ALJ") was conducted on July 29, 2015.  Tr. 36-56.  Plaintiff

was represented by counsel and testified at the hearing.  *Id*.  The ALJ also took the

testimony of vocational expert Trevor Duncan.  *Id*.  The ALJ denied benefits on

October 14, 2015.  Tr. 53-66.  The Appeals Council denied Plaintiff's request for

review on March 28, 2017.  Tr. 1-6.  Plaintiff requested judicial review of the

---

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's

first name and last initial, and, subsequently, Plaintiff's first name only, throughout

this decision.

ORDER ~ 2

ALJ's October 14, 2015 decision on May 23, 2017.  Tr. 669-73.  On May 3, 2018, this Court remanded the case to the Commissioner for further proceedings.  Tr. 675-87.  The Appeals Council then remanded the case to the ALJ for a new hearing.  Tr. 688-90.  Administrative Law Judge C. Howard Prinsloo held a hearing on December 17, 2019.  Tr. 641-65.  He took testimony from Plaintiff, medical export Jay Toews, Ed.D., and vocational expert Kimberly Mullinax.  *Id.* The ALJ entered an unfavorable decision on March 3, 2020.  Tr. 622-34.  The Appeals Council did not act during the prescribed period set forth in 20 C.F.R. § 404.984.  Therefore, the ALJ's decision became in the final decision of the Commissioner.  The matter is now before this Court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).  ECF No. 1.

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 32 years old at the alleged date of onset.  Tr. 174.  The highest grade she completed was the eighth grade.  Tr. 208.  Plaintiff's reported work history includes jobs as a fruit packer/sorter and in kitchen prep.  Tr. 209, 230.  At application, she stated that she stopped working on July 1, 2009, due to her conditions.  Tr. 208.

///

ORDER ~ 3

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by  42 U.S.C. §§ 405(g), 1383(c).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the claimant is capable of performing past relevant work, the Commissioner

must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant is incapable of performing such work, the analysis proceeds to step

five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination,

the Commissioner must also consider vocational factors such as the claimant's age,

education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v.

Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five,

the burden shifts to the Commissioner to establish that (1) the claimant is capable

of performing other work; and (2) such work "exists in significant numbers in the

national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

# THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 1, 2009, the alleged onset date.  Tr. 624.  At step two, the ALJ found that Plaintiff has the following severe impairments: borderline intellectual functioning; major depressive disorder; lumbago with degenerative disc disease of the thoracic spine; post concussive syndrome; obesity; and headaches.  Tr. 624.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 625.  The ALJ then found that Plaintiff has the RFC to perform light work as defined in 20 CFR §§ 404.1567(b), 416.967(b) with the following limitations:

> the claimant is limited to only occasional climbing of ladders, ropes, or scaffolds and only occasional exposure to hazards, such as unprotected heights or dangerous moving machinery.  She is limited to tasks that can be learned in 30 days or less involving no more than simple work-related decisions with few workplace changes.  She can tolerate superficial public interaction.

Tr. 627.  At step four, the ALJ identified Plaintiff's past relevant work as an agricultural produce sorter and found she could perform this past relevant work.  Tr. 633.  On that basis, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from July 1, 2009, the alleged date of application, through the date of his decision.  Tr. 634.

///

ORDER ~ 8

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her DIB benefits under Title II and SSI benefits under Title XVI of the Social Security Act.  ECF No. 13.  Plaintiff raises the following issues for this Court's review:

1.    Whether the ALJ failed to properly assess the medical opinions;

2.    Whether the ALJ failed to properly assess Plaintiff's testimony; and

3.    Whether the ALJ violated the Court's mandate by not assessing Plaintiff's alleged illiteracy as part of the RFC determination.

**DISCUSSION**

**1.    Medical Source Opinions**

Plaintiff challenges the ALJ's treatment of the opinions from Emma Billings, Ph.D. and Jenifer Schultz, Ph.D.  ECF No. 13 at 13-21.

The Ninth Circuit has repeatedly held that there are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).  Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's

1    opinion.  *Id*.

2        If a treating or examining physician's opinion is uncontradicted, the ALJ

3    may reject it only by offering "clear and convincing reasons that are supported by

4    substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

5    Conversely, "[i]f a treating or examining doctor's opinion is contradicted by

6    another doctor's opinion, an ALJ may only reject it by providing specific and

7    legitimate reasons that are supported by substantial evidence."  *Id.* (citing *Lester v.*

8    *Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).  The specific and legitimate standard

9    can be met by the ALJ setting out a detailed and thorough summary of the facts

10   and conflicting clinical evidence, stating his interpretation thereof, and making

11   findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ is

12   required to do more than offer his conclusions, he "must set forth his

13   interpretations and explain why they, rather than the doctors', are correct."

14   *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

15       **A.    Emma Billings, Ph.D.**

16       On October 29, 2013, Dr. Billings completed a psychological assessment of

17   Plaintiff and diagnosed her with majority depressive disorder, pain disorder, and

18   borderline intellectual functioning.  Tr. 546-52.  Dr. Billings opined that Plaintiff

19   had the ability to learn and recall routine tasks with repetition, but she had

20   difficulty with multi-step activities both immediately and after delay, that her pace

21   at responding to tasks was within low average levels, and that she did not

demonstrate any difficulties with inattention, but that it was necessary to "continually repeat directions to her with every activity before she was able to understand and begin each task."  Tr. 551.

The ALJ gave "significant weight to the portion of her opinion that relies on test results.  While her test results reflect notable cognitive deficits, these are consistent with a limitation to simple tasks, learned in a short period in an environment with few changes."  Tr. 632.  He then rejected the rest of the psychological opinion for three reasons: (1) the instructions she had to repeat were "novel" and for "multiples tasks that is not reflective of the same tasks she would do in a simple, unskilled job;" (2) it was a one-time examination; and (3) the opinion was inconsistent with her reported activities.  Tr. 632.

The ALJ's first reason for rejecting a portion of the opinion, that the instructions were novel and not reflective of the same tasks she would do in a simple unskilled job, is not specific and legitimate.  The tasks and tests Dr. Billings used to assess Plaintiff included the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV), the Wechsler Memory Scale-Fourth Edition (WMS-IV), and the Trail Making Part-A and Part-B.  Tr. 549.  The WAIS-IV and WMS-IV contain subtests designed to score a claimant's verbal comprehension, perceptual reasoning, working memory, processing speed, auditory memory, visual memory, visual working memory, immediate memory, delayed memory.  Tr. 550-51.  The Trail Making Test is also used to decipher a claimant's processing speed.  APA

ORDER ~ 11

1    HANDBOOK OF FORENSIC NEUROPSYCHOLOGY, 60 (Shane S. Bush et al. eds., 2017).

2    It is unclear how well the ALJ is versed in the administration, scoring, and

3    interpreting these tests and their results.  Therefore, his conclusion that these tests

4    include novel instructions that are not consistent with the tasks associated with

5    unskilled work is speculative.  *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565,

6    570 (7th Cir. 2003) (the ALJ should not play doctor).

7         Likewise, nothing in the medical expert's testimony indicated that the tasks

8    associated with these tests were novel or asked for tasks more complex than those

9    required in unskilled work.  Dr. Toews stated that Plaintiff's verbal processing

10   would be problematic, agreeing with counsel's statement that "it might be more of

11   that training period, getting direction, instructions where she needs the repetitions."

12   Tr. 658.  The role of the medical expert is to answer the ALJ's questions pertaining

13   to medical tests such as those performed by Dr. Billings.  HALLEX I-2-5-34.

14   Therefore, if the ALJ had the opportunity to ask Dr. Billings regarding the tasks

15   associated with these tests, but did not.  Without more explanation as to how these

16   tests are not reflective of the instructions involved in unskilled work this reason is

17   not specific and legitimate.

18        The ALJ's second reason for rejecting a portion of the opinion, that it was a

19   one-time evaluation, is not specific and legitimate.  The length of treatment

20   relationship and the frequency of examinations is a factor relied upon in

21   determining how to weigh medical opinions, 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2), and Dr. Billings only saw Plaintiff for the single evaluation, Tr. 546-52. However, Dr. Billings' status as an examining physician dictates the standard the ALJ must meet to reject the opinion, *Holohan,* 246 F.3d at 1201-02 (Setting forth the three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)," and only extending the clear and convincing or specific and legitimate standards to treating and examining physicians), and does not rise to the level of specific and legitimate itself.

The ALJ's third reason for rejecting a portion of the opinion, that it was inconsistent with Plaintiff's reported activities, is not specific and legitimate. A claimant's testimony about her daily activities may be seen as inconsistent with the presence of a disabling condition. *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990). Here, the ALJ found that the opinion was inconsistent with Plaintiff's "ability to drive her children to school, take care of them as their primary caregiver for the last 10 years since alleging disability, and with her minimal treatment and responsiveness to medication." Tr. 632. Here, the ALJ failed to state how driving, caring for children, and her treatment regimen were inconsistent with any portion of Dr. Billings' opinion. Therefore, this failed to meet the specific and legitimate standard. *See Embrey v. Bowen*, 849 F.2d at 421-22 (The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain

ORDER ~ 13

why they, rather than the doctors', are correct.").

The ALJ also rejected any portion of Dr. Billings' opinion that drew on physical symptoms.  Tr. 632.  However, Dr. Billings' only statement about physical impairments in the medical source statement were that she "complains that she is unable to do many tasks because of chronic pain, A review of the case notes from her medical provider, Jennifer Williams, PZ-C, indicated that Josephine does have 'degenerative changes' in her left hip and back.  Her physical limitations are deferred to medical personnel."  Therefore, there are no physical limitations opined to reject.

### B.    Jenifer Schultz, Ph.D.

On September 30, 2013, Dr. Schultz completed a psychological evaluation of Plaintiff.  Tr. 540-44.  She diagnosed Plaintiff with major depressive disorder, rule out a learning disorder, and rule out borderline intellectual functioning.  Tr. 543.  She opined that Plaintiff's ability to understand and reason is poor, and her "immediate memory is adequate but her historical memory is not good.  She has few friends and limited activities.  [Plaintiff's] ability to tolerate or adapt to stress is poor."  Tr. 544.

The ALJ gave the opinion little weight, stating the following:

> Her opinion appears imprecise given her narrative and is poorly supported by her clinical interview and mental status examination.  It is also inconsistent with the minimal observations of psychiatric difficulty by treating providers, minimal treatment and responsiveness to medication, and the claimant's ability to drive and care for four children.  I note she reviewed minimal records and did not have the

ORDER ~ 14

benefit of psychological testing by Dr. Billings, which shows great abilities in memory than opined.

Tr. 361.

The majority of the ALJ's rationale is nonspecific. First, the ALJ found the opinion to be "imprecise given her narrative." Tr. 361. However, it is unclear how the narrative is "imprecise" given that the Ninth Circuit prefers narrative opinions over opinions expressed on a check-the-box form. *See Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). Without more explanation, the ALJ's finding of "imprecise" is not specific and legitimate.

Likewise, the ALJ fails to state how the opinion is "poorly supported" by the clinical interview and mental status exam. He fails to state how the opinion is inconsistent with the observations of other providers, minimal treatment, or her responsiveness to medications. He fails to state how the opinion is inconsistent with her abilities to drive a car and care for her children. The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22.

Finally, the ALJ found that Dr. Schultz's opinion was inconsistent with the psychological testing performed by Dr. Billings, "which shows greater abilities in memory than opined." Tr. 631. However, it is unclear, how Dr. Schultz's opinion that Plaintiff's "historical memory is not good," Tr. 544, is inconsistent with the WMS-IV finding that Plaintiff's Delayed Memory is low average, Tr. 551.

ORDER ~ 15

1   Therefore, this reason fails to meet the specific and legitimate standard.

2       In conclusion, the ALJ erred in his treating of these opinions.  The case is

3   remanded for the ALJ to properly address the opinions of Dr. Billings and Dr.

4   Schultz.

5   **2.    Plaintiff's Symptom Statements**

6       Plaintiff challenges the ALJ's treatment of her symptom statements.  ECF

7   No. 13 at 5-13.

8       It is generally the province of the ALJ to make determinations regarding the

9   reliability of Plaintiff's symptom statements, *Andrews v. Shalala*, 53 F.3d 1035,

10  1039 (9th Cir. 1995), but the ALJ's findings must be supported by specific cogent

11  reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent

12  affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's

13  testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d

14  1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834.

15      The ALJ found Plaintiff's "statements concerning the intensity, persistence,

16  and limiting effects of these symptoms are not entirely consistent with the medical

17  evidence and other evidence in the record for the reasons explained in this

18  decision." Tr. 628.  The evaluation of a claimant's symptom statements and their

19  resulting limitations relies, in part, on the assessment of the medical evidence.  *See*

20  20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 16-3p.  Therefore, in light of the case

21  being remanded for the ALJ to readdress the medical source opinions in the file, a

ORDER ~ 16

new assessment of Plaintiff's subjective symptom statements will be necessary.

**3.    Illiteracy**

Plaintiff argues that the ALJ violated the Court's mandate by not assessing her alleged illiteracy.  ECF No. 13 at 21.

The rule of mandate dictates that any district court that has "received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it."  *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012).  The Ninth Circuit has held that the rule of mandate applies to Social Security administrative remands from a federal district court in the same way they would apply in any other case.  *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). Reversal is required under these doctrines where the ALJ's decision fails to comply with, or is otherwise inconsistent, with the "letter and the spirit" of the District Court's remand order.  *Ischay v. Barnhart*, 383 F.Supp.2d 1199, 1214 (C.D. Cal. 2005); *see also Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) (holding that "deviation from the [District] [C]ourt's remand order in . . . subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review").

On May 3, 2018, Magistrate Judge John T. Rodgers entered an Order remanding the case back to the Commissioner with the following instructions regarding Plaintiff's alleged illiteracy:

Whether Plaintiff is illiterate is crucial to determining her RFC, and considering this case is being remanded, the ALJ is instructed to

ORDER ~ 17

develop the record on this point.  *See Howard v. Massanari*, 255 F.3d 577, 584-85 (8th Cir. 2001) citing *Wilcutts v. Apfel*, 143 F.3d 1134, 1137-38 (8th Cir. 1998) (the ALJ has the duty to fully and fairly develop the record and listing tests which can be administered to determine literacy.

Tr. 685.  On June 3, 2018, the Appeals Council vacated the ALJ's previous decision and remanded to the case to the ALJ with the instructions to "offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision."  Tr. 690.

The ALJ's decision on remand only addresses literacy in summarizing Plaintiff's allegations.  Tr. 628.  The decision is otherwise silent on the issue. Defendant argues that since the ALJ asked the Plaintiff about her ability to read at the hearing, that he met this Court's mandate.  ECF No. 14 at 2.  However, the Court's mandate instructed the ALJ to develop the record concerning Plaintiff's literacy and provided a case reference that included a list of tests that can determine literacy.  Tr. 685.  The ALJ asked the medical expert about evidence concerning Plaintiff's alleged illiteracy, and was told that Plaintiff's literacy was not evaluated in the record.  Tr. 656.  "An ALJ's duty to develop the record . . . is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  Therefore, the ALJ failed to follow the Court's mandate by failing to develop the record and failing to discuss limitations from the alleged illiteracy in the RFC determination.

ORDER ~ 18

On remand, the ALJ will properly develop the record regarding Plaintiff's alleged illiteracy.  This will include a consultative evaluation to test Plaintiff's literacy.

**CONCLUSION**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]"  *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met).  This policy is based on the "need to expedite disability claims."  *Varney*, 859 F.2d at 1401.  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96; *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014)

(remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose).  Here, Plaintiff has not demonstrated that a hypothetical was given to the vocational expert that was consistent with the opinions of Dr. Schultz or Dr. Billings.  Therefore, the Court cannot discern whether or not crediting the opinions as true would result in a finding of disability.  Furthermore, the record must be properly developed regarding Plaintiff's literacy.  Therefore, on remand, the ALJ will properly address the opinions of Dr. Schultz and Dr. Billings, develop the record regarding Plaintiff's literacy (including testing), address Plaintiff's literacy as part of the RFC as mandated by this Court previously, and make a new determination regarding Plaintiff's symptom statements.  This will require the ALJ to make a new RFC determination, a new step four determination, and a new step five determination, if one is required.  In addition, the ALJ should supplement the record with any outstanding medical evidence and take additional testimony from a vocational expert at any remand proceedings.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, ECF No. 13, is **GRANTED,** and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

///

///

ORDER ~ 20

2.  Defendant's Motion for Summary Judgment, ECF No. 14, is **DENIED**.

The District Court Clerk is directed to update the case caption, enter this Order, and provide copies to counsel.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED this 22nd day of July, 2021.

_Stanley A. Bastian_
Stanley A. Bastian
Chief United States District Judge

ORDER ~ 21